3-19-0416 Allen Hampton Apolli v. The Board of Trustees of the Bolingbrook Police Pension Fund and Detective Henry Cunningham Appellants Oh, I'm sorry. Mr. Labarde, would you like to start? Thank you, Justice McDade. I would. May it please the Court, Brian Labarde on behalf of the appellant, the Board of Trustees of the Bolingbrook Police Pension Fund. This case was made by the Bolingbrook Police Pension Fund on the disability application of the appellee. The short version of the facts are that there was a traffic accident that occurred in 2016 in which the officer was injured. The Pension Board conducted multiple days of hearings, received extremely voluminous documentary evidence, nearly 1,500 pages, which of course is in the record, and ultimately voted to deny the police officer's request for a line-of-duty disability. Procedurally speaking, subsequent to the vote to deny, but prior to finalizing their decision, the applicant was sent for an additional functional capacity evaluation to determine the level of his ability to function. At Mr. Pinelli's request, the Pension Board reconvened the hearing, reopened the evidence, accepted the new FCE into evidence, even though they had already voted to deny, and at the same time accepted an amendment to the application to seek a not-in-the-line-of-duty benefit in the alternative to the request for the line of duty. In doing that, Mr. Labarde, the new FCE was one that was conducted with the benefit of the requirements for a police officer taking that into consideration? That is the August 7th of 2018 FCE, Justice O'Brien. I think as espoused in our briefs, however, all of the medical opinions had the benefit of the job description. So this issue of whether or not the job description was reviewed in terms of rendering an opinion on the officer's capability, I would suggest is a red herring. As much as all of the Pension Board doctors had both the old FCE, the new FCE, and the job description, and were able to evaluate all those materials simultaneously and reach a decision. To that extent, the Board ultimately voted to deny, yet again, finding that the applicant was not disabled. So the Board did not reach the issue of whether or not this was an act of duty or not an act of duty. And as much as they found him not disabled, that was not an issue they needed to reach. There is some discussion briefly in the briefs on the standard of review to be applied. We argue that the correct standard review is manifest weight of the evidence, as this is a question of fact. That's per the Wade case, and more recently, the Buffalo Grove fire case, both cited in our brief. The appellee does make an argument regarding review of documentary evidence that can be held de novo. That's from the Wilford case. We would suggest a couple of things. The first is that the Wilford case is materially different from this case. In that case, you had an issue that was primarily a legal interpretation, and so de novo would have been the correct standard of review in that case. This case really relates to questions of fact in terms of whether or not the facts give rise to a disability. The Buffalo case is a recent case, is cited in our brief as distinguishing Wilford on those same grounds. Essentially, I believe that the appellee's argument asked this court to reweigh the voluminous evidence that was heard by the pension board. We cite the Goodman case throughout our brief for the proposition that if there's evidence of record to support the board's decision, it should be affirmed. The appellee in his brief, and I'm sure in his argument, will argue that, well, that's well and good, but the evidence of record must be competent evidence of record. We'll discuss the IMEs in detail as to why each of those are competent. Again, I think the theme of the medical evidence in this case is two of the three IME providers retained by the pension board found the applicant not disabled. This isn't a case where you have potentially one outlying doctor or very little medical evidence to support the board's decision. You have two of three IME doctors who conducted in-person exams of the applicant, reviewed a voluminous record. Two of three found him to be not disabled. So turning to those doctors, the first doctor that the pension board would rely on is Dr. Biafora. His report can be found in the record at page 1143. Dr. Biafora found the applicant not disabled. There has been an issue discussed. The appellee suggests that Dr. Biafora's report should not be relied on because he misdiagnosed a labral tear. It's itemized in our brief, but that's simply not the case. If you look at Dr. Biafora's report, he reviews an MRI of the applicant's left shoulder that's dated January 23rd of 2017. He specifically says on one page of his report, there is no full, without evidence of full thickness tear. And on the second page of his report, citing the same MRI, says there is an impression of associated labral tear. That's at page 1143 of the record. So the suggestion that his report is somehow unreliable because he misdiagnosed some of the evidence is not true. In addition to that, remember that he also conducted an in-person evaluation of the applicant. So he isn't conducting simply a review based on the records. He's conducting an in-person review of the applicant in his office. Excuse me. The second doctor that would support the pension board's determination the applicant is not disabled was Dr. Williams. His report is in the record at page 1126. Again, the appellee suggests that this report is inherently unreliable because it relied on this earlier functional capacity evaluation that did not have the job description. First, it's important to note that that first FCE was an FCE that the officer was sent to by the employer, not the pension board. So we had no control over what records that evaluator reviewed. But having said that, the evaluator did adopt the medium physical demand level from the dictionary of occupational titles in reviewing the in conducting the FCE. And if you look at the job description for a Bolingbrook police officer, which is in the record, it adopts that exact same standard of medium physical demand level from the dictionary of occupational titles. It actually pulls from the dictionary and pastes the definition directly into the job description. And that's in the record at page 690 is the job description. So whether this FCE did or did not have the specific job description for Bolingbrook police, it used the correct standard in determining whether the officer was able to function as a police officer. Dr. Williams specifically said, and I quote from his report at 1132, the objective test of his work function demonstrates the ability to complete the physical nature of his job. Based on his FCE, Mr. Hampton physically qualifies for his position as a police officer and is not disabled. That's at page 1133 of Mr. of Dr. Williams report. So again, not only do we have two reports finding him not disabled, we have two reports that conclusively find the applicants not disabled. Now there was conflicting evidence in the record. There's no question about that, which is why this is a case again where I would discourage the court from reweighing the evidence, because you have conflicting evidence. And it is the pension board's duty to weigh the conflicting evidence to reach a determination. So one of the conflicting evidence reports was one of the pension board's doctors, Dr. Alpert. His report is in the record at page 1114. He finds the applicant disabled, but then goes on to say, I would send him back to work based on the restrictions outlined in the FCE. So this is the earlier FCE that the appellee suggests is unreliable because it doesn't have the job description. So in the first instance, I think you can't have it either way. You're either relying on the FCE or you aren't relying on the earlier FCE. You can't pick and choose and say we're going to rely on it for those opinions that find him disabled, but we aren't going to rely on it for those opinions that find him to be not disabled. The Dr. Alpert opinion, the board chose to lend less credence to in their role as a fact finder because of that inconsistency. Because on the one hand, he checks the box in his report saying I find officer Hampton to be disabled. But on the other hand, the narrative of report says, well, but I would send him back to work based on the FCE, which said he could return to work as a police officer. So his report is in internally inconsistent and that he finds him disabled, but then says I would return him to work. The other doctor that the appellee points out found the applicant to be disabled is Dr. Chudak, who I may be butchering that name. I apologize. He was the treating physician for Mr. Hampton. He again said he can return to work per the FCE, but did qualify it by saying there are certain things as a police officer, he should not do. Here's what I would say to that is recall that because Dr. Chudak was a treater, he saw the applicant prior to the pension board's IME physicians. So all of the IME physicians saw Dr. Chudak's report, saw his recommendations, saw his take on the results of the FCE that Mr. Hampton went through. And again, two of three of them concluded, even after reading those reports, that he is not disabled and can continue to serve as a Bollingbrook police officer. The other thing that I would note in terms of the final doctor that the appellee relies on is Dr. Mehta, which is M-E-H-T-A. That's the workers' compensation doctor. Appellee argues that workers' compensation doctor would certainly be least cautious in finding him to be disabled. His report is in the record at page 696. Again, all of the pension board's doctors saw these reports and made their own determination. Obviously, they disagree with the treating physician and they disagree with Dr. Mehta. And it's important to note that Dr. Mehta's report does not say this guy is disabled, he can't be a police officer. In fact, it says that in June of 2017, that Mr. Hampton reported that he is feeling significantly better. He's progressing nicely. At that point in time, he was not yet at maximum medical improvement. So there was still some road to go. But Dr. Mehta's report does not suggest this guy is disabled now or permanently for that matter. As far as the case law cited in the board's briefs, I just hit on a couple things briefly. First, the appellee argues that Kazukis is a similar case to this one. I would suggest for the reasons stated in our brief, that's not the case. Namely, the biggest difference is in the Kazukis case, you had three doctors who all found the police officer suffered from a disability due to low back pain. In this case, again, that's not what we have. What we have here is two of three doctors finding the police officer is not disabled. So I suggest factually speaking that that case is not comparable to this one. The other point that's raised frequently in the briefs is these reports of subjective pain from the police officer. The appellee suggests are undisputed. Nobody questioned his reports of subjective pain. Subjective pain does not rise to the level of disability. And again, all three of the pension board doctors conducted an in-person evaluation and read all the reports, including these reports of subjective pain. And all of them found him to be not disabled. The last thing that I would notice there is an argument regarding remand and due process violation. I'm sorry. I'm sorry. Your time is up. Oh, I'm sorry. I thought that was the yellow light. My apologies. It looks red to me. I apologize. Then for the reasons stated in our brief, we would ask that you affirm the decision of the pension board and reverse the decision of the circuit court. And we would stand on our brief for any points not argued. Thank you. Thank you. You will have time for rebuttal. Thank you. Mr. Pennelly. Thank you, your honors. Good afternoon. My name is Vincent Pennelly. I represent the appellee, Mr. Allen Hampton, who was a bowling book police officer for 12 years, contributing to that pension fund. We are asking you to reverse the decision of the board for two reasons. One, and first and foremost, is they relied on incompetent IME evidence to support their opinion. And two, most importantly, they totally ignored the uncontradicted, credible evidence in the record that Mr. Hampton suffered an injury in a serious car collision on December 20th of 2016. And we believe that we met our burden of proof to present that at the board hearing. With respect, if I could take just one second, to the standard of review that you should apply in this case. We don't dispute that with respect to an administrative body's findings of fact that those are to be upheld unless they are against the manifest way to the evidence. However, we would point out, as this court has recognized in the recent decision of Prodzik, that the deference that's afforded to a board's findings of fact is not boundless, and that you are able, as a reviewing court, to look at the entire record. Not just focus on, is there something in there that supports the board's decision, you can look at the entire record. Whether you do that under a clearly erroneous standard for a mixed question of law and fact, or a manifest weight standard, we believe that under either of those prisms of review, you should reverse the board's decision. I would just add that, with respect to this question, I think it's important because, contrary to what counsel said in his opening statement, this was not an extensive hearing that took place. The hearing of the evidence took place on one day, one afternoon, for a couple of hours, and consisted totally the testimonial evidence of the applicant, Mr. Hampton. The rest of it was the introduction of medical records and the IME reports. So, in reviewing that record, you are going to be reviewing the IME reports, not the testimony of the IME doctors. And so, when that is the case, I think the courts have said that it's appropriate that you can review those documents de novo. In other words, look at them for yourself to determine whether or not they are adequate evidence. And I disagree with counsel that the Wilford case is not applicable. That case has never been overruled. And, in fact, our Supreme Court, in the Wade and Kazuka's decisions, it's clear that they have undertaken that same task, looking at the entire record in determining whether or not a board's decision as to whether somebody is disabled is or is not against the manifest weight of the evidence. So, for those reasons, we ask you to look at the entire record and not just on specific points. I also need to address a couple of factual things that counsel said that were not correct. First of all, the first FCA, Functional Capacity Assessment, that was done at the direction of Dr. Chudak, who was Mr. Hampton's treating doctor. So, he commissioned that evaluation. And, as you've pointed out, the evaluator did not have the job description. The second test was a Functional Capacity Evaluation, and that was done at the direction of the Bolingbrook Police Department after the denial of this application. So, it was not available to the IME doctors, the second FCE. In fact, that's part of our claim that we asked that the IME doctors be provided this second FCE so that they could review it and determine whether it affected their opinions. That request was denied by the board. All the board did was say, we'll take it into the record, we've reviewed it, it doesn't change our opinions, but we're not going to let the IME doctors look at it. And respectfully, the board is not composed of doctors. They don't have the medical evidence or background to evaluate it. So, that was significant that they did not allow it to be examined by the IMEs. But most importantly, that FCE, and I encourage the court to look at it, clearly showed that Mr. Hampton had deficits that would prevent him from performing his full duties with the Bolingbrook Police Department. Particularly with respect to having to arrest people, subdue fleeing suspects, subdue people who are resisting arrest, pushing heavy vehicles out of the way, lifting or pulling injured people, all the type of physical activities that of course he would need full use and strength of his left shoulder, which he did not have. One other significant point in the record that's undisputed, and counsel didn't dispute it because he can't. All of the IME doctors, all three of them, all said he suffered an exacerbation of a pre-existing asymptomatic arthritic condition in his left shoulder. Their findings of facts say he never had treatment for it, didn't know he had arthritis, and in fact, there's no evidence that he was ever treated for anything, and that it was asymptomatic before the collision. No question about that. The doctors all say, including all the treaters and the IME done for workman's comp, that the incident, the collision was severe enough that it exacerbated or aggravated that condition to make it symptomatic. The only dispute here with the two IMEs that say he's not disabled is, well, that was just temporary. That was just temporary, and it should have gone away, and then he'll suffer the long-term effects of that arthritis, but that's just the natural progression of it over time. So what we have here is it's undisputed that he had a significant collision, that it caused an aggravation of a pre-existing condition that was asymptomatic. That, under the law, should entitle him, and under many cases that we've cited, and that the board does not dispute, entitles somebody to a disability benefit if the medical evidence supports that it was an aggravation of a pre-existing condition. And in this case, there's no question that that's what happened. Now, if I could just point out a couple other significant facts that counsel didn't talk about, and that is the objective evidence that his shoulder was injured by this collision. And that is, and the most telling, in our view, is the MRI arthrogram that was done to his shoulder. Now, that's a dye arthrogram. It's not just a picture. They inject dye into the shoulder, and then they watch it, how it looks inside of the shoulder so they can identify injuries and problems in the shoulder. So, that dye revealed that he has both a superior labral tear, which extends to the posterior inferior portion of the labrum, and a Bankart lesion, which is also a tear. Furthermore, it says they may represent the sequela of multidirectional instability, a collision that throws you around on the inside of the car. That would cause you multidirectional instability. I encourage you to see that report. It's at pages 410 and 411 of the record. Dr. Lee, who then examined him after that, and every doctor who examined him for treatment purposes afterwards, confirmed that he has the tear in the shoulder, and that he has popping, catching, clicking, weakness, and pain in that shoulder. And in fact, those complaints are consistent throughout all of the treating doctors' exams, throughout the physical therapy, throughout the work hardening, throughout the IME reports, consistent all the way through. And not one doctor, not one physical therapist, nobody in this record, questioned whether or not he was indeed experiencing the pain and limitations of motion that he indicated that he was. And that's significant. He attended 19 physical therapy sessions without meeting, without missing any of them. He then did work hardening, 20 sessions, four to five hours a session, where he's just working on that shoulder, trying to rehabilitate it. The evidence is also undisputed that Dr. Chudik, who is a treating doctor, who sent him for the physical therapy and the work hardening, examines him afterwards and says, the work hardening and the physical therapy has now made it worse. His pain is worse afterwards, and his limitations are worse. Dr. Chudik, who sent him for the first functional capacity evaluation, did not return him to work. So that functional capacity evaluation wasn't significant enough for Dr. Chudik to say, well, okay, you can return to work. He said, you can return with these restrictions. No pushing, pulling, arresting subjects, trying to detain somebody who's committing a crime, or struggling with an arrestee, all those physical activities that he has to do as a sworn police officer, he can't do them. And the doctor restricted him from doing that. On Dr. Maida, who is the IME, who he was sent to by the work comp carrier, again, you know, generally speaking, they're very conservative when it comes to disability. He was unequivocal in his findings, and again, it's in the record, pages 691 to 698, he found underlying arthritis was aggravated, and that the mechanism for it was the collision. And that's a competent mechanism to cause the asymptomatic symptoms to become symptomatic. And he put work restrictions on him of no lifting more than 20 pounds. Dr. Albert, it's interesting because I don't think I've heard this argument from them to this point in time that somehow his opinion is ambivalent. Dr. Albert, who's a board-certified orthopedic surgeon, reviewed the job description at length and found unequivocally that he's disabled due to aggravation of a pre-existing arthritic condition caused by the December 20th collision. And that even with a total shoulder replacement, which several of the doctors are recommending as the only treatment left for him to do, that's not going to guarantee a return to work for him. So that evidence I submit to you, and remember, what is the burden of proof at the hearing level? The burden of proof is preponderance of the evidence. That's in the board's own findings of fact. They say he didn't meet the preponderance. I say the preponderance is more likely than not, 51% to 49%. That's the accepted civil standard in all civil proceedings in the state of Illinois as to the appropriate burden of proof. If you look at all of the evidence in this record, they want to focus simply on the two IMEs. In our briefs, I've pointed out in detail why they're not competent evidence. But if you look at the totality of the rest of the evidence in this case, from all the other doctors, it's clear that we met our burden of proof. Now, I won't have a chance to come back to you, but when counsel argues that we're asking you to reweigh the evidence, we're not. We're just simply asking you to review the evidence in totality and find that we met our burden of proof. Please affirm the circuit court and reverse the board and remand this matter with instructions that he be granted a duty disability pension. Thank you. Thank you, Mr. Penale. Are there any questions for Mr. Penale? No, thank you. No, thank you. Mr. Labarde, I owe you an apology. Your light was yellow and not red. I'm very sorry. If you need a little extra time, we'll give that to you. Not at all, Judge. I appreciate it. I appreciate it. I think I've said my part. If I could have a brief five minutes for rebuttal, though. Absolutely. So, Mr. Penale took the words right out of my mouth. He stole my thunder. They're asking you to reweigh the evidence. He's even asking you to look at the MRI and make a determination as the court as though you were a doctor. Again, all of the doctors in this case saw that medical evidence and made their determination. Whether the standard is preponderance of the evidence at the pension board level is not at issue here. What's at issue is the standard of review in the appellate court. And there is voluminous evidence of record, not just some evidence, but voluminous evidence of record to find that the applicant is not disabled. They've reviewed these same MRIs that counsel is asking you to now conclude something other than what the doctors did. There's no question there's a dispute in the medical evidence as to whether he is or is not disabled. Everyone can agree on that. The question is, what deference do you give to the pension board's findings having reviewed that record? And I suggest it would be inappropriate for a reviewing court to insert itself in those proceedings when there was plenty of evidence of record. The other thing that I would note very quickly is I'd like to touch very briefly on the on the Prosdek case that counsel cited. We distinguish this in our brief, but in summary, that is an Article 4, a fire case, not an Article 3, a police case. The standard for line of duty disability is very, very different for fire than it is for police. The court in Prosdek, this court actually acknowledged that the same is true here. That case does not apply to this factual circumstances. The other issue is in Prosdek, you had three doctors who all said this guy has PTSD. In this case, again, we don't have a unanimous panel of doctors saying he's disabled. We have two of three IMEs saying he is not disabled. And again, there is evidence that says he is, but it's disputed. I have nothing further to add. I'm, of course, happy to answer any questions any of the justices may have. I have a question for you. I am going to Dr. Miyafora's conclusion. I think he opined and it's in the board's decision at 842. It says that the applicant sustained a temporary exacerbation of his preexisting left shoulder arthritis as a result of the accident. And then he goes on to say he's currently experiencing the natural progression of the underlying disease process and is more likely than not, not related to the auto accident. So I guess from that, I'm struggling to find where he's saying that the arthritis that was previously asymptomatic is aggravated by the accident and is now progressing. But that the progression is not related to the auto accident. He says he sustained a temporary exacerbation at the time of the accident. I don't believe this is permanent or caused an acceleration of the shoulder arthritis. I guess I'm struggling to find that he says that it's temporary. And so when something is temporary, if we all agree that the word temporary means not forever, then should the pain that he experienced or the arthritis have stopped or gone away? I'm just struggling with what he uses that his conclusion to me, because he, in several parts, I think he seems to be saying that this arthritis can't be the basis for the disability. Am I misunderstanding what he's saying? I don't think so. I think you have to parse it into a couple of parts. And the first is the question is, is it temporary? And I think his conclusion is clearly it is, as evidenced by his certificate that the applicant's not disabled. The issue of whether or not you can aggravate it is a different issue than whether or not he's disabled. So I think what counsel was arguing about in terms of aggravation is, can you get a line of duty disability from the aggravation of a pre-existing condition? Everybody agrees that that is the case, but that's not the question here. The question here isn't whether he's disabled due to an aggravation. It's whether he's disabled in the first place. And the answer to that question is no. So I think it's confusing of two issues, the aggravation and the actual disability. If that answers your question, Justice O'Brien. It does. Thank you. Are there any other questions? We thank you both for your arguments this afternoon. The court will stand in recess until 1.30. Thank you again very much. We will take this under advisement and we'll issue a written decision as quickly as possible.